UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID BRUCE BATARICK,

    Plaintiff,

v.    Case No: 6:17-cv-1933-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance Benefits and Supplemental Security Income under the Act. Upon review, the Commissioner's final decision in this case is affirmed.

## Background[2]

On March 14, 2014, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability commencing on February 26, 2011, due to back pain and knee problems, kidney stones, a brain tumor, and high blood pressure requiring several medications (Tr. 161, 163, 190, 199-200). His claims were denied initially and on reconsideration and Plaintiff requested and received a hearing before an administrative law judge ("ALJ") (Tr. 120, 123, 129, 140, 29-66). On February 8, 2017, the ALJ found Plaintiff not disabled and issued his unfavorable decision (Tr. 12-28).

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.
[2] The information in this section comes from the parties' joint memorandum (Doc. 19).

On September 13, 2017, the Appeals Council denied Plaintiff's request for review (Tr.1-6). Accordingly, the ALJ's decision became the Commissioner's final decision. This appeal timely followed (Doc. 1).

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and published in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.) (Tr. 17). At step two, the ALJ determined that Plaintiff had the severe impairments of hypertension, morbid obesity, osteoarthritis of the knees, a history of kidney stones, lumbago, and a history of headaches (20 CFR 404.1520(c) and 416.920(c)) (Tr. 17). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 (Tr. 18). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit four hours at one time and a total of eight hours per day and stand/walk two hours at one time and a total of six hours per eight-hour day with normal breaks. The claimant cannot climb ladders, but can occasionally climb stairs and ramps, balance, stoop, kneel, and crawl. The claimant can crouch without limitations. The claimant has no manipulative, communicative, or visual limitations. The claimant should avoid concentrated exposure to extreme cold or humidity, and even moderate exposure to work hazards, including unprotected heights and dangerous machinery.

(Tr. 18).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 22).[3] After applying the Medical-Vocational Guidelines as a framework for decision making and considering a vocational expert's testimony, Plaintiff's age, education, work experience, and RFC, the ALJ found, at step five, that Plaintiff could perform a significant number of jobs in the national economy (Tr. 23-24), and was therefore not under a disability (Tr. 24).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such

---

[3] Plaintiff was forty seven years old on his alleged onset date, with a high school education and past relevant work experience as a drywall applicator (Tr. 22-23, 192).

relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

### Evaluation of Medical Opinions

Plaintiff contends that the ALJ failed to properly weigh and evaluate the opinion of his treating primary care physician, Stanley Stockhammer, D.O.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating

a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinions, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding a treating physician's opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the physician's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight.'" Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c) (2); Crawford, 363 F.3d at 1161. Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.[4]

---

[4] On January 18, 2017, Defendant published "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844 (January 18, 2007). See also 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules are effective as of March 27, 2017, and thus do not apply to the ALJ's decision here.

On March 16, 2011, Plaintiff presented to Dr. Stockhammer for a regular checkup and medication refills, complaining of joint pain and stiffness with weakness, range of motion limitations, and back pain. He was 5'7" tall, weighed 294 lbs., and was taking Lortab for pain, along with several anti-hypertensive medications (Tr. 465). Dr. Stockhammer noted Plaintiffs hypertension, brain lesion,[5] dyslipidemia, headaches, morbid obesity, bladder stone, and nephrolithiasis, and removed a skin tag (Tr. 464).

Plaintiff did not return to Dr. Stockhammer until November 10, 2015 (Tr. 460-462). On this visit, Plaintiff complained of generalized fatigue, joint pain and stiffness, and Dr. Stockhammer noted Plaintiff's previous reported diagnosis of a sella turcica (saddle-like compartment in the skull containing the pituitary gland) mass. Dr. Stockhammer also noted a renal calculus in Plaintiff's bladder and osteoarthritis. The doctor's treatment plan included a brain MRI with contrast, a renal ultrasound, and complete labs (Id.).

On April 27, 2016, Plaintiff returned, with an assessment of a questionable sella turcica mass status, hypertension with borderline control, morbid obesity with a 17 lbs. weight gain, history of renal calculi, and stable osteoarthritis. Dr. Stockhammer recorded abnormal findings for Plaintiff's bilateral knee edema with crepitus and ambulation with a cane (Tr. 458-459). It was noted that Plaintiff "never got brain MRI" and "never got labs." Plaintiff was advised to exercise and lose weight (Tr. 459).

On return visit on June 8, 2016, Plaintiff complained of renal calculi, joint pain/ stiffness, and fatigue, but denied shortness of breath, denied issues with urination due to

---

[5] On November 24, 2010, prior to Plaintiff's alleged onset date, he underwent an MRI of the brain which revealed a pituitary region (sella) lesion most consistent with macroadenoma (Tr. 239). On December 7, 2010, Plaintiff's neurosurgeon recommended a routine endocrine laboratory evaluation and, if pituitary function tests were normal, continued observation with follow up MRI scan, with repeat labs and visual field testing, in a year (Id.). There is no indication that Plaintiff underwent the recommended repeat MRI.

renal calculi and his brain tumor was described as stable - no new episode (Tr. 456-457). On examination, Dr. Stockhammer found back and knee tenderness (Tr. 456). The doctor's plan included exercise and weight loss, and a referral to pain management (Tr. 457).

On October 24, 2016, Plaintiff returned, bringing with him, a residual functional capacity questionnaire (Tr. 453-454). He had not had lab work done. Physical examination showed tenderness (Tr. 254). Plaintiff weighed 299 pounds (Id.). Assessments included morbid obesity, hypertension, and osteoarthritis.

On October 27, 2016, as summarized by the ALJ:

> Dr. Stockhammer completed the residual functional capacity assessment. Dr. Stockhammer noted that the claimant's symptoms included shortness of breath on exertion, headaches, chronic high blood pressure, osteoarthritis, and pain, especially in the knees. He further noted that the claimant had lumbar tenderness and decreased range of motion, as well as bilateral knee tenderness, deformity, and crepitus. He opined that the claimant's pain would frequently interfere with his ability perform even simple tasks and that he would miss more than four days of work each month. He opined that the claimant could sit two hours and stand 15 minutes at one time; stand/walk less than two hours total in an eight-hour day; and sit about four hours total in an eight-hour day. He indicated that the claimant could never twist, stoop, crouch, or climb ladders and stairs. He opined that the claimant would need to take unscheduled breaks four times daily, lasting 45 minutes to one hour. He opined that the claimant could occasionally lift less than 10 pounds and rarely lift 10 pounds. In addition, he opined that the claimant should elevate his legs one and a half to two hours during an eight-hour workday (Exhibit B7F).

(Tr. 21; 342-346). The ALJ discounted this opinion, noting:

> Dr. Stockhammer's opinion would not allow for more than limited sedentary work, but this opinion is not supported by his treatment records, which show minimal abnormal physical findings, no shortness of breath, and notations of stable osteoarthritis (Exhibit B10F). Further, this opinion is not

- 7 -

> consistent with the claimant's conservative treatment, lack of
> more objective medical support, and indications that his pain
> is adequately controlled. It is therefore given no weight.

(Tr. 22). Plaintiff contends that the ALJ "failed to state with particularity" the reasons for giving Dr. Stockhammer's opinion no weight and argues that the reasons provided by the ALJ are not supported by substantial evidence.

In fact, the ALJ did state his reasons for discrediting Dr. Stockhammer's opinion: (1) it is not supported by the doctor's treatment records; (2) it is not consistent with Plaintiff's conservative treatment; (3) it is not consistent with the lack of more objective medical support; and (4) it is not consistent with evidence that Plaintiff's pain is adequately controlled. Thus, the ALJ adequately articulated his reasons in compliance with the proper standard.

The ALJ's reasons are supported by substantial evidence. Although Plaintiff argues that the ALJ "failed to state with particularity how Dr. Stockhammer's treatment records, or any of the other medical records, are inconsistent" with the functional limitations the doctor found, this contention is without merit. As set forth above, Dr. Stockhammer's notes do report "minimal abnormal physical findings, no shortness of breath, and notations of stable osteoarthritis." And, the ALJ's other reasons are fully explained:

> The objective medical evidence is limited. The claimant has a
> history of kidney stones, but has not had recurrent debilitating
> blockages. He has hypertension, but there is no evidence of
> end organ damage. He also had a history of right knee
> chondromalacia, but 2011 bilateral knee x-rays showed no
> significant degenerative changes. Records also show a history
> of headaches and an assessment of lumbago . . .. Treatment
> records consistently documented that his pain could be
> controlled with the use of Lortab. The claimant acknowledged
> that pain medications have helped with pain relief, but
> reported having back injections that lasted only one week.

> However, he has not been referred to a neurosurgeon. He has been seen by a pain management doctor, whose records show benign exam findings and recommendations for weight loss and a home exercise program. Additionally, he has not required emergent treatment or hospitalizations for any of his reported symptoms. Further, he is morbidly obese with a body mass index of 44.95 and has been advised to lose weight, but the record does not document sustained weight loss.
>
> The claimant presented to the hearing with a cane, which he stated Dr. Stockhammer recommended, but he already had, so there was no prescription. However, the need for the assistive device is not documented in the record in light of the conservative treatment, examination findings, and lack of surgical referral.

(Tr. 21-22). These findings are supported by the evidence the ALJ cites.

Plaintiff's contention that some of these records contain findings that are not necessarily inconsistent with Dr. Stockhammer's opinion is of no moment. The issue is not whether some of the evidence could support a different finding (it could); the issue is whether substantial evidence supports the ALJ's finding. The ALJ cited to the evidence from Plaintiff's treating and examining physicians as well as state agency consultants, and noted the diagnostic imaging, the relatively benign examination findings, the conservative treatment, and repeated indications from Plaintiff's treating pain management specialist that Plaintiff's pain is adequately controlled. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Phillips, 357 F.3d at 1240, n. 8. "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. (internal quotation and citation omitted). The ALJ did not err in the evaluation of the medical opinion.

Credibility

Plaintiff contends that the ALJ committed error in evaluating Plaintiff's report of his

- 9 -

pain and limitations.

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). To do so, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Id. When an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Id., see also Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

Here, the ALJ applied the pain standard and determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 19). Although Plaintiff complains that the ALJ "referenced facts that he scattered throughout the Unfavorable Decision rather than concisely stating in one place," a review of the decision shows that the ALJ supported his general credibility statement with numerous specific findings. The ALJ found "the medical evidence of record does not support the claimant's allegations," citing, among other things, November 2011 bilateral knee x-rays

that showed no significant degenerative changes (Tr. 19); numerous examination findings of normal gait, normal sensation, normal strength (Tr. 20); consistent reports of adequate pain relief and no significant side effects from medication (Tr. 20-21); and the absence of any hospitalizations (Tr. 22).

Plaintiff complains that the ALJ added other facts that have "little to no bearing" on his credibility, citing the ALJ's reliance on a record which indicated that in March 2013, Plaintiff reported that he was bitten by ants "while fixing the roof." (Tr. 20, 278). Now, he objects to the lack of context for this statement to indicate his actual level of physical functioning while fixing the roof and suggests that perhaps he "merely directed the efforts of others." The Court is unpersuaded. While the old adage "hard work never hurt anyone who supervised it" is true, the medical record cited by the ALJ notes Plaintiff "got bit by gnats[6] while fixing the roof" and "now has dark spots *on both arms and near the right ear.*" (Tr. 278 - emphasis added). The location of the injuries does not square with mere passive observance of the work of others.

Plaintiff objects to the ALJ's reliance on Plaintiff's ability to perform other activities (such as his ability to drive short distances and go to the store), noting that the ALJ did not mention other information contained in the evidence of record which provides a more accurate context to the activities (Doc. 19 at 33). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision is sufficient to enable the Court to conclude that the ALJ properly considered the claimant's condition as a whole. Dyer, 395 F.3d at 1211 (internal quotation omitted). "The question is not ... whether ALJ could have reasonably credited [the claimant's] testimony,

---

[6] This appears to be a typographical error which was repeated by the ALJ. Other record references confirm that Plaintiff was bitten by "ants." (Tr. 278).

but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r, of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011).

The ALJ provided a sufficiently detailed analysis of the evidence of record, supplied a rationale for his findings, and his conclusions are supported by the evidence he cites. For these reasons, the Court rejects Plaintiff's arguments concerning the ALJ's credibility finding. As the Commissioner's administrative decision was made in accordance with proper legal standards and is supported by substantial evidence, it is due to be affirmed.

## Conclusion

Upon consideration of the foregoing:

1. The Commissioner's final decision in this case is **AFFIRMED**.

2. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on July 12, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record